[L. A. No. 12403.  In Bank.—February 25, 1931.]

## HOMER C. MILLS, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Homer C. Mills, *in pro. per.*, and Henry P. Leavitt for Petitioner.

Mott, Vallee & Grant and Paul Vallee for Respondent.

THE COURT.—This proceeding was instituted to review an order of the Board of Governors of The State Bar of California, recommending to this court that petitioner Homer C. Mills be disbarred from the practice of the law in this state, which recommendation was based upon findings made by Local Administrative Committee No. 3 of the county of Los Angeles, after its hearing, upon legal notice and in due form, of the charges preferred against him.

Petitioner's several contentions may be summarized in the statement that he claims that the findings were not justified under the evidence, which was without substantial conflict and was insufficient to sustain any of the charges made against him, and that the committee· erred in refusing to

reopen the proceedings for further testimony and to consider the effect of certain additional evidence submitted in the petition in affidavit form.

On March 14, 1926, complainant, E. E. Easton and petitioner entered into the following written contract:

"La Jolla 658 Schaeder,
    "1297 Coast Blvd.,

"Mar. 14/26.

"I hereby agree to take over the matter of further prosecution of the suit of E. E. Easton versus Susan T. Brant et al. Now pending in the Federal Courts of California, as chief counsel, and to defend a divorce action now pending at Los Angeles No. D38874 between Elise H. Easton and said E. E. Easton; to bring any and all other actions necessary to fully protect the rights and interests of said E. E. Easton in above actions, or in or to other property interests growing out of certain leasing commissions, or any of the matters connected with said causes for twenty-five (25%) of any and all sums recovered, provided that said E. E. Easton shall pay any and all necessary court costs or other expenses.

"(Signed) HOMER C. MILLS.

"I hereby accept the above proposition.

"(Signed) E. E. EASTON."

All of complainant's assets were at the time tied up in litigation and he was without any immediate funds whatsoever. Because of complainant's financial situation petitioner promised that he would secure the money necessary to pay the costs of the pending litigation, plus $1,000 to be advanced to complainant for payment of certain personal obligations and costs in connection with said divorce action, the total amount required being estimated at $6,000. Thereafter and on April 10, 1926, petitioner produced one E. R. Dampier, who agreed to advance said sum of $6,000 and to whom complainant gave his note for that amount, executed jointly by himself and one Dyer B. Holmes.

It is petitioner's alleged breach of trust in connection with the handling of portions of this fund on behalf of complainant which forms the basis of this proceeding. It is sufficient to set forth a few of the serious and vital discrepancies in the accounting between them, which point

unerringly to a failure by petitioner to account for a part of the fund which came into his hands.

In the first place, petitioner failed to furnish any proper bills or vouchers to cover a number of the expenditures alleged to have been made by him on behalf of complainant from the trust fund of $5,000 supposed to have remained in his hands after payment to complainant of the $1,000 for his personal use. Said Dampier, the lender of said sum, was a law clerk, not admitted to practice in California, but employed by petitioner during the time said services were to be rendered at a salary of $200 per month. The evidence fails to show whether the $6,000 was ever actually loaned by said Dampier to complainant and it fairly supports the finding that said Dampier advanced to petitioner, on account of said loan, only an undetermined part of the total sum, which part was paid in installments over a period of time. Petitioner, however, did not at any time inform complainant that said $6,000 was received by him in installments, but permitted him to repay the whole sum of $6,000, together with interest on the whole amount thereof for the whole period of time as expressed in the note.

Petitioner submitted an alleged receipt of Dampier for $1,000 paid him from said fund for ''Service for checking record, briefing, etc. . . . '' Convincing evidence is lacking that petitioner ever paid this sum to Dampier out of said trust fund, but even if he had it would have been an improper payment as said services were such as petitioner himself was bound to perform under said contract. Furthermore, the evidence supports the opinion of the committee that said Dampier, having loaned petitioner only an undetermined portion of said $6,000, gave his receipt for $1,000 to petitioner to be used by petitioner in padding his account.

Petitioner likewise charged complainant with an item of ''Extra help in typing record, making copies of exhibits, rechecking records, typing briefs, etc., $1096.95,'' $711.95 of which was an improper charge. With the exception of $385 paid for copies of exhibits, the item covered services originally contemplated and covered as the natural overhead of a law office and services of a general clerical nature, part of which at least were performed in connection with peti-

tioner's general office work, apart from work on litigation in which complainant was interested.

Petitioner likewise wrongfully charged an item of advice and assistance in procuring delay in payment of alimony judgment, $200, which was covered by his original contract of employment. He also improperly charged an item of advice and assistance in securing a two years' extension of Holmes' indebtedness, $500, no services of this nature being requested by complainant or rendered by him. In connection with the taking of certain depositions, petitioner also charged complainant with the sum of $177.40, $67.40 of which still remained unpaid and for collection of which he had referred the deposition notary to complainant.

In short, from the evidence it appears that over and above the amounts legitimately paid out by petitioner, he failed to properly account for the items above mentioned, to wit: $1,000 alleged to have been paid said Dampier, $711.95 for stenographic help, etc., and $67.40 on depositions.

The additional evidence submitted by petitioner has been carefully examined. It throws no further light upon the case, but merely sets forth certain letters sent to him by complainant's attorney in an effort to secure an accounting and, in view of the findings of the committee, a later effort to secure from said Dampier a return of such portion of said $6,000 as was never loaned by Dampier to him for use in complainant's behalf.

Notwithstanding the serious misconduct of petitioner as outlined above, we hesitate to inflict upon him permanent disbarment. Under the contract he was not required to secure any money for the expenses of litigation nor for the personal use of the client. The contract between them was thus departed from at least to that extent. Moreover, petitioner, with apparent skill and ability conducted a vast amount of litigation for complainant, taking one case even to the Supreme Court of the United States. For these services under the contract he could receive no compensation. In view of the other departures from said contract and in view of all the surrounding circumstances, petitioner may have believed that he would be justified morally in padding his account to supply the absence of compensation. He is well advanced in life and, so far as shown, has heretofore

been a lawyer of integrity and ability and may even yet, if given the opportunity, redeem himself from the odium of this present offense. Accordingly, we have concluded to impose upon him a suspension from practice.

It is, therefore, ordered that petitioner herein, Homer C. Mills, be and he is hereby suspended from the practice of law in this state for the period of one year from and after the date of filing of this order.

A rehearing was denied by the Supreme Court on March 27, 1931, and the following opinion then rendered thereon:

THE COURT.—Upon the hearing of a petition for a rehearing filed herein, it satisfactorily appeared to this court from the affidavit of petitioner and the reply thereto of respondent The State Bar of California, that petitioner on the sixteenth day of June, 1930, closed his law office and ceased to practice law and since said date has not practiced law in this state. It is, therefore, ordered that the order of this court heretofore made suspending petitioner from the practice of law for the period of one year be and the same is hereby modified so that the suspension of petitioner shall commence on the sixteenth day of June, 1930, and continue for the period of one year from said last-named date.

The petition for rehearing is denied.