[L. A. No. 15797. In Bank.—September 18, 1936.]

WILLARD J. LANEY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Emyrs Davis for Petitioner.

Philbrick McCoy for Respondent.

THOMPSON, J.—This is a proceeding to review the recommendation of the Board of Bar Governors recommending disbarment in a disciplinary matter. The local administrative committee which heard the testimony recommended that petitioner be suspended for the period of three years.

The facts upon which the cause must be determined are neither complicated nor much in dispute. The petitioner has been practicing his profession since 1913, except for three years during the World War, the first portion of his professional life having been spent in Wisconsin. Since 1921 he has practiced in California. During the years 1924 and 1925 a man by the name of W. E. Quirk made petitioner's office his headquarters, served process and notices for petitioner, and did such other errands as petitioner required. After leaving petitioner's office he was connected with the office of J. W. Falkner in El Monte, California, and while there rendered similar services. Falkner was the attorney for Mrs. Ault E. Shugg, who became the guardian of the estate and person of her incompetent brother, Burr McClelland, in 1920. Mrs. Shugg was an elderly lady, she being 82 in 1935, and Quirk was employed to do collecting for the estate, and, in fact, to manage the property, subject, of course, to Mrs. Shugg's approval. In 1929 petitioner approached Quirk for the purpose of securing a loan of $1,000 in order to refinance his home, situate on Grand Avenue, south of Slauson Avenue, in Los Angeles. Quirk informed Laney that the estate did not at the time have the money. Subsequently, and in March, 1930, Laney was substituted as the attorney for the guardian in the place of Falkner. A part of the assets of the estate consisted of shares of stock in the Whittier National Bank, appraised at the sum of $7,182.50, and in May, 1931, more than one year later, this stock was sold with the approval of the probate court for the sum of $13,500. However, instead of depositing the proceeds in the bank at El Monte, an account was opened with the Los Angeles First National Trust and Savings Bank in Pasadena. This was done because the surety insisted on exercising joint control and had made provision for such joint control at the El Monte bank. No

such provision was made for the account in the Los Angeles First National Trust and Savings Bank in Pasadena. Upon receipt of the proceeds thus realized, Quirk informed petitioner that the estate was in a position to loan him $1,000. Petitioner and his wife executed their promissory note, secured by a trust deed on their home, and received the guardian's check for $1,000. At the time the home was encumbered by a first lien in favor of the Southern California Building and Loan Association in the sum of $2,500 and a second lien in favor of a Mrs. Shaw in the sum of $1,000. Petitioner informed Quirk that some of the money would be used to reduce the principal on the first encumbrance to $2,300 and on the second to the sum of $700, some part of the principal having formerly been paid. Petitioner used between $200 and $300 to reduce the indebtedness and used the remainder for other purposes. No approval of the loan by the probate court was sought or obtained. It appears that the Southern California Building and Loan Association appraised petitioner's home in December, 1930, for the sum of $4,350. The Home Owners' Loan Corporation appraised the same property in 1934 in the sum of $3,450. Another appraiser, testifying for the petitioner, testified that he estimated the property to be worth $5,200 in 1929. Aside from the fact that a shrinking in values occurred, commencing in the latter part of 1929, is the fact that this appraiser did not go inside the property or do anything other than to look at it from the outside. He did not know the number of rooms it contained and had no knowledge of sales in the vicinity. It is therefore apparent that the security given the guardian for the loan was inadequate. In fact, the estate received no part of the $1,000. The first encumbrance was foreclosed on the property.

There is a great deal of testimony given by W. E. Quirk, who says that he drew papers for and signed the name of petitioner to pleadings for petitioner to the effect that petitioner knew of the filing of the eleventh annual account on March 21, 1932, in which the guardian listed the bank stock as a part of the assets of the estate and did not show any of the investments made from the proceeds. Also there is testimony on the part of Quirk that the money was borrowed for the purpose of enabling petitioner to pay funds he was short in another estate; but all of this testimony on the part

of Quirk is flatly contradicted by petitioner, and we do not feel that credence should be given the testimony of Quirk in opposition to that of petitioner in this case for the following reasons: Petitioner testified that when he discovered that the eleventh annual account was filed he objected seriously, and shortly thereafter another attorney was substituted in his place. In investigations which later resulted, petitioner testified before the grand jury in an effort to assist the estate, as a result of which Quirk was indicted for grand theft, to which charge he subsequently pleaded guilty. Furthermore, it is apparent from reading the testimony of another witness, Mrs. Shaw, that the telephone conversation which Quirk related as having had with a lawyer demanding money from petitioner was with Mrs. Shaw, who was demanding payment of the money due her on her second encumbrance. Resolving fair and proper intendments in favor of one charged with unprofessional conduct, we must conclude that the testimony of Quirk should not be accepted as sufficient, under the circumstances, to overcome the positive testimony of the petitioner here.

We therefore are faced with this one proposition, whether the petitioner, by securing a loan without the approval of the probate court and giving inadequate security therefor and failing to repay the same, is guilty of such unprofessional conduct that he ought to be disbarred. Petitioner is not a novice in the profession. Presumably he was fully familiar with the confidential relationship existing between an attorney and his client, and fully cognizant of the rule which prohibits him from taking any advantage of his client. In the present instance this rule is to be applied more strictly by reason of the fact that the guardian was elderly and to a very considerable degree incapacitated by reason of her age. We cannot believe, in the face of the appraisal put upon the property by the building and loan company, of which the petitioner was fully aware, that he did not know that the security tendered was insufficient. There can be no doubt that had he been acting in good faith he would have asked the probate court for an approval of the loan, regardless of whether the same was entirely necessary as a matter of law. Nor do we think it is sufficient for petitioner to reply that the affairs of the guardian were being managed by Quirk. Quirk was not an at-

torney at law, and was not bound by the same rules of conduct that governed petitioner. But even if he were, Quirk's responsibility would not relieve petitioner of a like responsibility.

As we have already seen, petitioner was guilty of unprofessional misconduct, and conduct of such a character as to involve a degree of moral turpitude. It can hardly be gainsaid that had petitioner had the proper regard for the interests of the estate or his client he would not have been willing to give the valueless security, particularly where the client was in no position to determine the value of the security. The question is, however, what disciplinary action is necessary in order to protect the courts and the public? Should one who is inclined to impose upon elderly widows administering the affairs of their incompetent kin be allowed to remain a member of the profession, or will suspension for a period of time suffice to effect a reformation? We do not believe that suspension will be efficacious, nor that such a one is entitled to a certificate vouching for his good moral character. Therefore the recommendation of the Board of Governors of The State Bar should be approved.

It is ordered that petitioner be disbarred, this order to become effective thirty days after the filing of this opinion.

Seawell, J., Langdon, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.