[L. A. No. 17689. In Bank.—February 17, 1941.]

STUART D. ANDERSON, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Stuart D. Anderson, *in pro. per.*, and Fred O. Reed for Petitioner.

Claude Minard for Respondent.

THE COURT.—Petitioner herein seeks a statutory "review" by this court of a disciplinary proceeding which was instituted against him as a practicing attorney at law in this state, and which resulted in a recommendation by the State Bar to this court to the effect that petitioner be suspended from the practice of the law for a period of one year. More particularly, the sole question that is presented herein relates to whether the said recommendation should be approved; or, in the event of its rejection,—by order of this court,—to what discipline petitioner should be subjected. The facts are not the subject of dispute by the interested parties. In substance and effect they are as follows:

Petitioner, who was admitted to practice in California in August, 1923, and who has practiced continuously since that date in the city of Los Angeles, was employed on July 26,

1934, by Jennie Coburn, Lois Coburn and Roy Coburn as their attorney in a condemnation action. He was paid the sum of $100 and, additionally, as compensation for his services he was to receive 25 per cent of any sum in excess of $908 which might be collected for his clients in the said condemnation proceedings. On December 11, 1936, he received a warrant from the county of Los Angeles in the sum of $908 and a warrant from the city of Long Beach in the sum of $204, in settlement of his clients' interest in the action. At about the time petitioner received the said warrants, his mother was taken seriously ill and required extensive medical care and treatment. Petitioner was without cash resources of his own with which to meet the entire cost of such treatment, and he thereupon cashed the warrants received on behalf of his clients and used the money to procure necessary medical care and attention for his mother. At that time petitioner was enjoying a good law practice and he expected to be able to replace the money so used by him. However, he did not notify his clients that he had received the warrants.

In February, 1940, Jennie Coburn learned of the fact that the said warrants previously had been delivered to petitioner and thereupon demanded payment from him. Shortly before that time, petitioner had been injured in an automobile accident, and on her demand that he pay her the money he explained that he could not make immediate restitution, but that he would make repayment of the entire sum, with interest, over a period of time. Unwilling to accept that arrangement, Jennie Coburn filed a complaint in that connection with the State Bar, and thereafter that body instituted the instant proceedings against petitioner. A short time later he borrowed sufficient money and repaid his clients the total amount of the said warrants, together with seven per cent interest thereon,—and making no deduction for the percentage of the $204 to which, as hereinbefore stated, he was entitled as attorney's fee.

At the hearing before the local administrative committee, petitioner frankly admitted his misconduct and expressed his regret at its occurrence. The said committee recommended a private reprimand; but by the board of governors of the State Bar it was recommended to this court that petitioner be suspended from the practice of the law for a period of one year.

Notwithstanding the fact that petitioner does not dispute the facts disclosed by the record, but admits the truth of the very serious charge which was filed against him,—misappropriation of his clients' funds,—he seeks a review by this court upon the ground that the said recommendation of the board of governors is arbitrary and unreasonable.

In support of that contention petitioner cites five cases, in each of which was involved a proceeding of a nature similar to that here under consideration, and wherein this court ordered a reduction of the degree of discipline which in each instance had been recommended by the board of governors of the State Bar: *Mills* v. *State Bar*, 211 Cal. 579 [296 Pac. 280, 297 Pac. 19], *Herron* v. *State Bar*, 212 Cal. 196 [298 Pac. 474], *Peck* v. *State Bar*, 217 Cal. 47 [17 Pac. (2d) 112], *Egan* v. *State Bar*, 10 Cal. (2d) 458 [75 Pac. (2d) 67], and *Barbee* v. *State Bar*, 213 Cal. 296 [2 Pac. (2d) 353]. However, in each of the first four of the cited cases the discipline which was imposed by this court was the suspension of the petitioner from practice of the law for one year,— which is the identical measure of discipline recommended in the instant case by the board of governors. In other words, in the present proceeding the board of governors merely recommended the same discipline which this court had imposed in other proceedings for similar offenses. We are satisfied that in making the recommendation which was made herein the said board was mindful of the extenuating circumstances of the illness of petitioner's mother and of his straitened financial circumstances at that time, and that because of those factors it refrained from recommending the disbarment of petitioner.

The charge which was made against petitioner—that of converting his clients' money to his own use—is a very serious one and ordinarily would merit the drastic measure of disbarment. (*Mills* v. *State Bar*, 211 Cal. 579 [296 Pac. 280, 297 Pac. 19], *Brown* v. *State Bar*, 2 Cal. (2d) 533 [42 Pac. (2d) 306]; *Dalzell* v. *State Bar*, 6 Cal. (2d) 433 [57 Pac. (2d) 1300], *Padgham* v. *State Bar*, 6 Cal. (2d) 504 [58 Pac. (2d) 633], *Laney* v. *State Bar*, 7 Cal. (2d) 419 [60 Pac. (2d) 845], *Maggart* v. *State Bar*, 7 Cal. (2d) 495 [61 Pac. (2d) 451], *Glover* v. *State Bar*, 13 Cal. (2d) 229 [88 Pac. (2d) 922], and *Kennedy* v. *State Bar*, 13 Cal. (2d) 236 [88 Pac. (2d) 920].) Petitioner might legally have been

charged with embezzlement and, in such event, admittedly having converted his clients' money to his own use, it is unlikely that he would have escaped conviction; and had he been convicted, under the provisions of section 6101 of the State Bar Act, he automatically and necessarily would have been subject to disbarment.

The good record previously held by petitioner together with the fact that he repaid, with interest, the entire sum due his clients, and the assumed fact that the pressure occasioned by his mother's illness was considerable, all justified the conclusion of the board of governors that—commensurate with the gravity of the admitted misconduct of petitioner—in determining the discipline to be imposed it should be as lenient as the circumstances would permit.

This court is satisfied that the recommendation which was made by the board of governors of the State Bar was proper. It therefore is ordered that petitioner be suspended from the practice of the law for one year commencing with the date of filing of this decision.

CARTER, J., Dissenting.—I dissent.

It is well established that in determining the question of what discipline should be imposed upon an erring or offending attorney, mitigating circumstances should be given great consideration,—such as the motives and purposes which actuated his asserted misconduct, his previous good record, his characteristics and nature, also testimonials with respect to his good character and reputation. (*Marsh* v. *State Bar,* 2 Cal. (2d) 75, cases cited at p. 79 [39 Pac. (2d) 403].) It also is well settled that the discipline of an attorney, as contemplated by the provisions of the State Bar Act, is not punitive in character. Its primary object is the reformation rather than the punishment of the offender. A disciplinary proceeding is designed to effect that end and—for the protection of the courts, the legal profession and the public—to consider and determine whether the said offender may be deemed fit to continue as a practitioner of the law and as an officer of the court. (*Marsh* v. *State Bar, supra,* and cases there cited.)

Although in the present case the gravity of petitioner's offense cannot be minimized, it also appears that he has suffered greatly. The tarnishment of his record, the mental

torture which must have followed from his inability to re-establish his practice while laboring under the burden of his practiced deceit, his anxiety for his mother, and his own physical injuries, together with the added stigma of the disciplinary proceeding, have apparently combined to drive him to the acute realization that no circumstance, however necessitous, will justify an act of dishonesty or breach of trust. If—as is believed to be the fact—his lesson has been sufficiently severe to effect a permanent strengthening of his moral fiber, the imposition of a period of suspension from practice would serve no good purpose and might jeopardize his present and future livelihood as well as the safety of the one dependent upon him.

It would seem clear that the punishment which petitioner has already received, with the additional rebuke of a public reprimand, will suffice to deter him henceforth from yielding to any temptation, even under pressure of dire distress, again to wander from the path of moral rectitude.

In determining the degree of discipline which should be administered or prescribed in proceedings of this character, this court may be guided by the peculiar facts and circumstances of the individual case. Under such circumstances,—viewed in the light of the primary purpose to be effected by such discipline, as hereinbefore outlined,—it becomes unnecessary to discuss the question whether the degree of discipline here fixed conforms to that imposed in cases cited in the briefs as similar in point of fact to this case.

In my opinion, a public reprimand administered to petitioner should constitute sufficient discipline.

Houser, J., concurred.