[L.A. No. 31664. July 25, 1983.]

GEORGE WILLIS HIGHTOWER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Gordon Hunt and Munns, Kofford, Hoffman, Hunt & Throckmorton for Petitioner.

Robert McMahon as Amicus Curiae on behalf of Petitioner.

Herbert R. Rosenthal, Susan Mahony-St. Clair, Truitt A. Richey, Jr., and Robert M. Sweet for Respondent.

OPINION

**THE COURT.**—The Committee of Bar Examiners has twice refused to certify petitioner for admission to practice law for want of good moral

acter. (Bus. & Prof. Code, §§ 6060, 6062; Rules Regulating Admission to Practice Law, rule X.) Although he did not challenge the committee's findings and conclusions in the first refusal, he seeks review of the second.

Petitioner attended the University of West Los Angeles College of Law at night and worked full-time during the day. He received his J.D. degree in June 1976. In February 1979, he passed the bar examination on his seventh attempt.

In June 1979, the State Bar notified petitioner that it would conduct an inquiry into his moral character and fitness. Several hearings were held before a hearing panel involving a number of witnesses. The hearing panel concluded that after graduating from law school but before he passed the bar, he engaged in the unlawful practice of law on three occasions.

The hearing panel recommended that petitioner be denied admission, and he did not seek review of the recommendation, which became conclusive. (Rules Regulating Admission to Practice Law, rule X, § 103(a).)

Having waited the requisite two-year period (*id.*, § 104(a)), petitioner again sought admission. The Committee of Bar Examiners did not appoint a hearing panel but notified petitioner that it would hold a hearing, that oral argument would be limited to 15 minutes for each side with 5 minutes for rebuttal, and that he would be permitted to make a statement under oath, but that the total time limit would be 20 minutes for him and his counsel. There was no provision for testimony by witnesses. At the hearing petitioner chose to respond to the committee's questions and did not make a statement.

I. THE 1979 HEARINGS

A number of petitioner's fellow employees, friends, and relatives appeared and testified as to his honesty, integrity, industriousness, sincerity, and good moral character. Evidence was also presented as to three incidents where he practiced law.

In 1976, he prepared a petition for dissolution of marriage for his friend, Mrs. Gaiter. He prepared interrogatories, represented Mrs. Gaiter on an order to show cause providing oral argument to the court, and argued a motion to compel answers. He prepared a financial declaration indicating that Mrs. Gaiter paid Mr. Becks, an attorney, $75 for fees and $25 for costs, and had Mrs. Gaiter sign the statement under penalty of perjury. Becks was listed as the attorney for Mrs. Gaiter with petitioner's address and phone number on the documents, and petitioner signed Becks' name to several of the documents.

Becks testified that the documents were prepared without his knowledge or consent. Petitioner testified that he had worked for Becks, one of his law school instructors, doing research and investigations, that Becks had agreed to sponsor him in the State Bar Practical Training of Law Students' program and that although he intended to formally enroll in the intern program, he never applied. According to petitioner, Becks reviewed the documents and discussed the court appearances with him. He admitted signing Becks' name, claiming that Becks had authorized him to sign when he was not available. The hearing panel found in accordance with Becks' testimony that he was unaware of petitioner's actions and did not consent to use of his name.

In the fall of 1977, Mr. Garner approached petitioner with regard to a complaint served upon him for property damage resulting from an automobile accident. Petitioner filed an answer, listing Ms. Gentile as attorney of record and signing her name to the answer with his address and phone number. Ms. Gentile, an attorney, denied that she was aware of the filing or that she consented to the use of her signature. When she learned in 1979 of these actions, one day before the scheduled trial, she obtained a continuance and was relieved by the court as counsel of record. A default judgment was subsequently entered for $3,817.90.

Petitioner testified that he and Ms. Gentile were friends and study partners in law school, that they participated in a California Youth Authority Project, that they had considered becoming partners upon his admission, that she looked over his draft of the pleading and suggested changes, and that she gave him an exemplar of her signature to use in signing the answer when it was redrafted. When she withdrew from the case, he secured another counsel, Mr. Sands, to represent the Garners, and the other attorney permitted the case to go by default. The hearing panel found that petitioner had signed Ms. Gentile's name to the answer without her knowledge or consent.

In the third incident involving unauthorized practice of law, petitioner prepared an unlawful detainer complaint listing the plaintiff as representing himself in pro. per. with petitioner's address and phone number. During a hearing, the trial judge asked whether plaintiff was a licensed attorney, and petitioner indicated he was. However, the judge asked him for his card, and he admitted he was not licensed. Petitioner was sentenced to four days in jail for contempt. Petitioner testified that he went to the courtroom to offer support to the 71-year-old plaintiff who was afraid. The plaintiff knew he was not an attorney, and in going to the courtroom petitioner had no intention to try the case. When the case was called, he saw his friend was upset and went with him into the counsel area. The judge then asked whether he

was an attorney, and he answered affirmatively. He freely admitted that he knew his actions were wrong.

## II. The 1980 Hearing

In a State Bar interoffice memorandum reporting on petitioner's second application, an investigator reported that petitioner "is still fighting the findings, and rationalizing his conduct. It would seem that [petitioner] still does not adequately understand nor comprehend the nature of his actions."

At the hearing petitioner was the only witness to testify. In response to questions, he maintained that he had been authorized to sign Mr. Becks' and Ms. Gentile's signatures, that he had not received any compensation in the three matters, and that his purpose was to learn the practice of law to help him in the bar examination. When asked why the two attorneys had denied authorizing his actions, he said that "they denied it because they knew their authorization was wrong and they wanted to avoid the responsibility." He stated that he made serious mistakes of judgment, that he knew it was wrong for a person who was not a lawyer to hold himself out as a lawyer, and that it was improper to sign an attorney's name to a document. Since the three prior incidents, he has not engaged in any activity constituting unauthorized practice of law.

The committee determined that petitioner had not demonstrated and does not possess the requisite good moral character. The committee did not make specific findings as to the basis of its determination.

## III. Discussion

■ The burden of proving good moral character is upon the applicant. "Pursuant to this rule the applicant must initially furnish enough evidence of good moral character to establish a prima facie case, and the committee then has the opportunity to rebut that showing with evidence of bad character. (*Konigsberg* v. *State Bar of California,* 366 U.S. 36, 41 [6 L.Ed.2d 105, 111, 81 S.Ct. 997].)" (*Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 449, fn.1 [55 Cal.Rptr. 228, 421 P.2d 76]; *Hall* v. *Committee of Bar Examiners* (1979) 25 Cal.3d 730, 734 [159 Cal.Rptr. 848, 602 P.2d 768]; *Bernstein* v. *Committee of Bar Examiners* (1968) 69 Cal.2d 90, 95 [70 Cal.Rptr. 106, 443 P.2d 570].)

■ On review great weight is given to the committee's findings, but they are not binding on us. Petitioner bears the burden of showing that the findings are not supported by the evidence or that the committee's action is erroneous. We examine the evidence and make our own determination as

to its sufficiency, resolving reasonable doubts in favor of petitioner. (*Bernstein* v. *Committee of Bar Examiners, supra,* 69 Cal.2d 90, 97; *Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d 447, 450-451.)

■ The State Bar initially urges that petitioner has failed to meet his threshold burden of establishing good moral character. However, it is apparent from the notice of hearing on his reapplication providing for a 20-minute presentation and the brief hearing held that all parties considered the record of the extensive hearings on the first application part of the record to be considered on the reapplication. At the hearings on the first application petitioner presented a number of witnesses who testified to his honesty, integrity, industriousness, sincerity, and good moral character. Obviously, the State Bar, having provided for a 20-minute presentation, did not contemplate that petitioner would bring to the hearing numerous witnesses to provide the same or similar testimony. Just as the State Bar at the reapplication hearing did not produce the attorneys whose names were used by petitioner, petitioner could not reasonably be expected to repeat the showing of good moral character made at the hearings on the first application.

Although the rejection of his initial application is final and conclusive, this does not mean that the hearing panel in the earlier proceeding determined that the evidence offered by petitioner did not meet his threshold requirement. The basis of the rejection, as shown by the findings, was that he engaged in the unlawful practice of law rather than that he failed to present evidence to make an initial showing of good moral character.

At the hearing on the reapplication, petitioner made several statements indicating that he understood the seriousness of his prior conduct. He acknowledged his mistakes and explained that in engaging in his misconduct he had believed that practical experience would help in passing the bar. Thus, he associated with lawyers and pursued three opportunities to assist poor friends with legal problems. He does not think that these motives, which resulted in his serious mistakes, impairs his present ability to understand the meaning of the practice of law. There is no evidence of any misconduct of any nature since the 1979 hearings.

We reject the State Bar's claim that petitioner failed to meet his threshold burden of producing evidence of good moral character. This is not a case where the applicant withheld evidence of good moral character and then sought review on a bare record seeking consideration of favorable evidence not in the record. Nor is it a case where the applicant claims that he should have a further hearing to present favorable evidence. (Cf. *Coviello* v. *State Bar* (1955) 45 Cal.2d 57, 65 [286 P.2d 357].)

Although petitioner, contrary to the findings in the first proceeding, continues to assert that Mr. Becks and Ms. Gentile authorized him to prepare documents and sign their names, this fact does not require rejection of the reapplication. Petitioner's unwillingness to adopt the hearing panel's version of the facts—in effect confessing that he lied—does not disqualify him from practicing law.

In analogous situations, we have recognized that similar conduct by an applicant does not disqualify him. "[R]efusal to retract his claims of innocence and make a showing of repentence appears to reinforce rather than undercut his showing of good character. . . . [¶] An individual's courageous adherence to his beliefs, in the face of a judicial or quasi-judicial decision attacking their soundness, may prove his fitness to practice law rather than the contrary. We therefore question the wisdom of denying an applicant admission to the bar if that denial rests on the applicant's choosing to assert his innocence regarding prior charges rather than to acquiesce in a pragmatic confession of guilt, and conclude that [he] should not be denied the opportunity to practice law because he is unwilling to perform an artificial act of contrition." (*Hall* v. *Committee of Bar Examiners, supra,* 25 Cal.3d 730, 744-745; *Martin B.* v. *Committee of Bar Examiners* (1983) 33 Cal.3d 717, 725-726 [190 Cal.Rptr. 610, 661 P.2d 160].)

The fundamental question remains whether petitioner is a fit and proper person to be permitted to practice, and that question usually turns upon whether he has committed or is likely to continue to commit acts of moral turpitude. (*Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d 447, 453.) On the basis of the conclusiveness of the first rejection, we must conclude that petitioner's activities of practicing law without a license involved moral turpitude, but that is not determinative if the petitioner demonstrates his rehabilitation and moral qualification to become a member of the bar. (*March* v. *Committee of Bar Examiners* (1967) 67 Cal.2d 718, 731 [63 Cal.Rptr. 399, 433 P.2d 191].)

■ "Rehabilitation . . . is a 'state of mind' and the law looks with favor upon rewarding with the opportunity to serve, one who has achieved 'reformation and regeneration.' (*In re Gaffney* (1946) 28 Cal.2d 761, 764 [171 Cal.Rptr. 873]; *In re Andreani* (1939) 14 Cal.2d 736, 749 [97 P.2d 456].)" (*March* v. *Committee of Bar Examiners, supra,* 67 Cal.2d 718, 732; *Resner* v. *State Bar* (1967) 67 Cal.2d 799, 811 [63 Cal.Rptr. 740, 433 P.2d 748].)

■ While the showing of rehabilitation is not overwhelming, there is substantial evidence of rehabilitation, and the State Bar furnishes no basis to reject that evidence. There is no evidence indicating that petitioner is not

rehabilitated. In this state of the record, we conclude that petitioner has met his burden.

The Committee of Bar Examiners is ordered either to certify petitioner to this court as one qualified to be admitted to practice law or to hold further hearings on his reapplication if the committee in the exercise of its discretion concludes that further hearings are warranted.