Edward G. PARTIN *v.* BAR of Arkansas

94-420                                              894 S.W.2d 906

Supreme Court of Arkansas
Opinion delivered March 20, 1995

*Appellant*, pro se.

*Kaplan, Brewer & Maxey, P.A.*, for appellee.

DAVID NEWBERN, Justice. Edward G. Partin II seeks admission to the Bar of this Court. He has completed the necessary educational requirements and has passed the Arkansas bar examination. The Board of Law Examiners has, however, refused to recommend his admission on the ground that he is not morally qualified. Mr. Partin contends the Board erred as he has rehabilitated himself since his criminal convictions for drug-related offenses in 1973, 1984, and 1986. He also contends procedures utilized by the Board and the Director of Professional Programs denied his rights to equal protection of the laws and due process of law. We affirm the Board's decision.

Mr. Partin graduated from the University of Arkansas School of Law in Fayetteville in 1992. He applied for admission to the Bar and to take the bar examination administered in February, 1993. On his application form, he disclosed his criminal convictions. The 1973 conviction occurred in Baton Rouge, Louisiana. At age 18 he pleaded guilty to possession of a Dilaudid, a controlled substance. Mr. Partin was placed on 18 months probation, and after seven months, the charge was dismissed pursuant to Louisiana law.

The 1984 offense occurred in Arkansas. Van Buren County Sheriff and State Police officers obtained a search warrant for Mr. Partin's rural home based on observation of a large number of marijuana plants growing in the vicinity of Mr. Partin's property. The search revealed two pounds of marijuana, seeds, peat pots, cigarette rolling papers, and a set of Ohaus weighing scales. Mr. Partin pleaded guilty in Van Buren County to possession of marijuana with intent to deliver. He was sentenced to four years imprisonment, and he forfeited a 1984 four-wheel-drive pickup truck in lieu of a $10,000 fine. The prison sentence was suspended, and Mr. Partin was placed on probation. One of the conditions of probation was that he not violate any local, state, or federal laws.

The final offense occurred in 1986. Sheriff and State Police officers spotted marijuana plots again in the general vicinity of, but not on, Mr. Partin's land. An affidavit for a search warrant stated there was a clearly defined trail leading from Mr. Partin's property to the areas where marijuana plants were found to be growing. This time the search revealed items identified by the State Crime Laboratory as marijuana seeds and various specimens of plant material which tested positive for marijuana and tetrahydrocannabinol, including a bag containing vegetable material which tested positive for marijuana. Mr. Partin was charged with felony manufacture of a controlled substance. He pleaded not guilty and was found guilty by a jury of the lesser included misdemeanor, possession of a controlled substance, which resulted in a one-year sentence. His probation was revoked, and he was sentenced to a term of eight months in prison, which he served concurrently with the one-year sentence. The 1984 felony conviction was expunged in 1991.

At the hearing before the Board panel, Mr. Partin testified he entered Arkansas Tech University in 1987 and completed his bachelor's degree with high honors in two years and nine months. He discussed entering law school with an advisor at Arkansas Tech and was told his past should not be a problem if he continued his rehabilitation. He was aware, however, that in view of his criminal convictions there would be more to becoming a member of the Bar than graduating and passing the examination.

Two weeks before he was to take the bar examination, Christopher Thomas, this Court's Director of Professional Programs, informed Mr. Partin, apparently as a precondition to his taking the examination, that he would be required to sign an acknowledgement stating that further proceedings may be necessary concerning his application if he passed the examination. He executed the acknowledgement. Mr. Partin achieved a passing score on the bar examination, and then Mr. Thomas informed him he was deferring the decision on admission to the Chairman of the Board of Law Examiners, apparently following the procedure prescribed by Rule XIII of the Rules Governing Admission to the Bar for determinations of moral character and fitness for reinstatement of lawyers who are disbarred or whose licenses have been suspended.

Although Rule XIII dealt with aspects of initial applications for Bar membership, including the statement that applicants must demonstrate character and fitness, the *procedural* provisions in the Rule for cases in which there were character and fitness issues mentioned only reinstatement. The Rule has since been amended to make it clear that procedure such as that followed in this case is proper with respect to an initial applicant, and as we discuss below, we find no fault in following that procedure in the case of an initial applicant prior to the amendment. The Chairman was unable to reach a decision and, again following Rule XIII procedure, he referred the matter to a panel of three Board members.

Mr. Partin requested a hearing before the panel. He was informed, in accordance with Rule XIII, of the requirement that he post a bond for costs associated with the hearing. He responded with a request that he be allowed to proceed *in forma pauperis*. His request was denied. Through subsequent correspondence with Mr. Thomas, an arrangement was made for a reduced bond of

$250. In connection with that decision, Mr. Thomas informed Mr. Partin he would be allowed to make a brief presentation. Apparently that statement was made out of concern that a long record, together with associated copying and mailing expenses, could amount to considerably more than $250, and indeed that turned out to be the case. The cost to Mr. Partin ultimately exceeded $600. A hearing was held on November 20, 1993.

At the hearing, Mr. Partin testified on his own behalf and responded to questions by the panel members and Mr. Thomas who served as the evidence officer and presented the documentary record. After the record of the hearing was reviewed by eleven members of the Board, they voted eight to three to deny admission.

### 1. Good moral character

The applicant has the burden of proving eligibility and must do so by a preponderance of the evidence. We review bar admission and reinstatement cases *de novo*, and we will not reverse the findings of fact of the Board unless they are clearly erroneous. *In re Application of Crossley*, 310 Ark. 435, 839 S.W.2d 1 (1992). In cases in which we are asked to review a moral character decision of the Board, we are concerned with whether the applicant proved that he or she had sufficient moral character by a preponderance of the evidence. *See In re Shannon*, 274 Ark. 106, 621 S.W.2d 853 (1981).

The essence of Mr. Partin's first point of appeal is that the Board erred because it did not give sufficient consideration to his rehabilitation as demonstrated by his academic achievements and numerous letters from friends, teachers, and relatives attesting to his honesty and trustworthiness. We see the issue a little differently. Our first concern is with a factual finding which is determinative of the case if we cannot find the Board to have been clearly erroneous in reaching it.

In its written findings and conclusions, the Board discussed the facts and then set out its conclusions. The first four paragraphs of conclusions had to do with the facts of Mr. Partin's criminal record. The Board then set out the following:

> 5. In 1973, the applicant pled guilty to a felony charge in the State of Louisiana. While a majority of the Board tends

to discount the significance of this plea, due to the passage of time, and the age of the applicant at the time of the offense, it is, nonetheless, of some probative value when considered in light of the subsequent behavior of the applicant many years later.

6. In connection with the 1984 felony charge in Van Buren County, Arkansas, a search warrant was obtained by local law enforcement personnel. One basis for the issuance of the warrant was observation of "several hundred" marijuana plants being grown near the residence of the applicant.

As a result of the execution of the search warrant, approximately two pounds of marijuana was found on the applicant's premises, along with other evidence that the applicant was engaged in the manufacture of a controlled substance on a significant scale. This other evidence included commercial fertilizer, "peat pots" and a set of Ohaus scales. There is no evidence in the record to explain any other use for these items or materials. The Board also notes the presence of numerous weapons at the applicant's residence. Pursuant to evidence obtained in the search, the applicant was arrested and ultimately pled guilty to a felony charge of possession of a controlled substance with intent to deliver. In consequence of the guilty plea, the applicant received a four-year suspended sentence and four years probation.

A majority of the Board finds and concludes that the record shows, beyond a preponderance of the evidence, that the applicant was engaged in growing and possessing more than modest amounts of marijuana in 1984.

* * *

7. Less than two years after pleading guilty and being placed on probation, another search was conducted of Mr. Partin's residence in Van Buren County. This search was based on aerial observation of a large stand of mature suspected marijuana plants being grown approximately three hundred yards north of Mr. Partin's residence. By the time the search warrant was executed, the large stand of mari-

juana had been removed. Nonetheless, the search warrant was pursued and minor amounts of marijuana were discovered in the applicant's residence.

Although charged with a felony, i.e., manufacture of a controlled substance, the jury found the defendant guilty, in 1986, of misdemeanor possession of a controlled substance.

The applicant's 1984 suspended sentence was subsequently revoked. The stated reason for revocation was "the defendant has failed to refrain from being in the company of persons who use marijuana."

A majority of the Board finds and concludes that the applicant manifested a disturbing indifference to the terms of his 1984 probation within a very short period after its entry. Indeed, the applicant, according to the record, was in possession of marijuana, and in the presence of others using marijuana, less than two years after being placed on probation.

*The applicant, during his testimony, continues to insist that he has never grown a controlled substance. A majority of the Board finds and concludes that the record, beyond a preponderance of the evidence, establishes otherwise. It is the conclusion of a majority of the Board that the applicant has yet to fully accept the criminality of his behavior, beginning in 1973, but most especially the more recent episodes of 1984 and 1986.* [Emphasis added.]

\* \* \*

In particular, the Board majority is compelled to conclude that the applicant engaged in criminal activity and has yet to exhibit remorse or acceptance of the criminality of his actions. The Board majority is persuaded that initial admission of this applicant would not contribute to the public interest, and may very well detract from the integrity of the bar and the Courts. Accordingly, Mr. Partin's application for initial instatement to the Bar of Arkansas is denied.

It is apparent that the Board concluded that Mr. Partin was not being truthful when he denied having grown marijuana upon

being asked by the hearing panel if he had done so. During oral argument before this Court, at which Mr. Partin appeared *pro se*, as he did at the initial hearing, he stated he had admitted to the panel that he had been *charged* with growing marijuana. The following colloquy ensued between Mr. Partin and Mr. Michael Mashburn, a member of the panel:

> MR. MASHBURN: I don't know much about growing marijuana but at some point in your life back in 1973 you had some books in your Volkswagen that apparently taught how that was done, is that right?
>
> MR. PARTIN: I've had books on it before, never been successful at it.
>
> MR. MASHBURN: When you were growing it, you were successful at growing it, is that right?
>
> MR. PARTIN: No, I said I never have been successful.
>
> MR. MASHBURN: Never have been successful growing it?
>
> MR. PARTIN: Right.
>
> MR. MASHBURN: Do you know enough about that process to tell me whether when you're starting the plants out and you have peat pots to start them out in, you start one plant per peat pot?
>
> MR. PARTIN: I've seen — starting them in peat pots was a joke. Marijuana plants, you know, they get about that tall and then they fall over and die. And that's all I know about growing marijuana in a peat pot.
>
> MR. MASHBURN: Have you ever successfully in your life, sir, grown a marijuana plant to its full mature height—
>
> MR. PARTIN: No.
>
> MR. MASHBURN: — and harvested one?
>
> MR. PARTIN: No.

In response to further questions, Mr. Partin denied some of the facts stated in the affidavits which resulted in the searches in 1984 and 1986, including, *e.g.*, denying any knowledge of how the stalks which tested positive for marijuana got on his property.

It is clear that the Board members did not believe Mr. Partin's testimony. The credibility of a witness is a matter of fact, and we have been given no reason to conclude that the Board's determination of the fact that Mr. Partin was being untruthful was clearly erroneous.

In their concluding remarks, members of the panel commended Mr. Partin for his efforts in obtaining an education and in maintaining a clean record since 1986. Our experience in cases of persons seeking initial admission to the Bar after denial by the Board is limited to a fitness, as opposed to character, case. *In re Application of Crossley*, 310 Ark. 435, 839 S.W.2d 1 (1992). Character cases have, however, arisen in other jurisdictions, and we have studied cases cited by Mr. Partin such as *In re Rowell*, 754 P.2d 905 (Or. 1988); *Petition of Diez-Arguelles*, 401 So.2d 1347 (1981). Mr. Partin is correct that those cases have emphasized the successful rehabilitative efforts of the applicants and have not concentrated on their criminal pasts. One of the items stressed in such cases, however, is candor about the past.

Mr. Partin cites a most interesting case from the California Supreme Court, *Martin B.* v. *Committee of Bar Examiners*, 33 Cal. 3d 717, 190 Cal. Rptr. 610, 661 P.2d 160 (1983). While serving as a U.S. Marine, Martin B. was acquitted of rape on a defense of consensual intercourse in 1972. In a later trial involving a separate accusation of rape by a different complaining witness, a jury deadlocked 11 to 1 in his favor, and the court dismissed the charge. Still later, he was convicted of filing a false claim against the government. The California State Bar Court refused to certify him for admission to the Bar. The State Bar Court conducted a "retrial" of the rape charges, calling live witnesses, and ultimately concluded that Martin B. had lied to that Court in maintaining his innocence.

In reversing and remanding the State Bar Court decision, the California Supreme Court concluded the "retrial" was unfair because vital court records no longer existed. The California Supreme Court recognized that, had Martin B. made a "pragmatic" admission to the Court of his guilt in the rape incidents, the State Bar Court probably would have recommended his admission to the Bar on the basis of his rehabilitation. The California

Supreme Court was critical of the State Bar Court for thus encouraging applicants who maintain innocence to be untruthful.

We find a difference between the *Martin B.* case and that of Mr. Partin. True, the one time Mr. Partin was charged with growing marijuana, he received a "favorable outcome" as he was convicted only of the lesser included offense of possession. He did not, however, receive such an outcome in 1984 when he was charged with possession with the intent to deliver and pleaded guilty of that offense after the Trial Court refused to suppress evidence strongly indicative that he was growing marijuana.

Of course we agree that Mr. Partin has a right to maintain that he has never successfully grown a marijuana plant or harvested one. We do not, however, know of any reason the Board should have been precluded from evaluating his truthfulness on the basis of its observations of him as a witness when confronted with the sworn statements used in the process of charging him in 1984 and 1986.

Mr. Partin's efforts at rehabilitation have apparently been remarkable, but the Board obviously concluded they are not complete in view of what the members perceived as his lack of candor, and we cannot disagree or find that conclusion clearly erroneous.

### 2. *Constitutional arguments*

#### a. *Equal protection*

Mr. Partin argues the Board violated his right to equal protection of the laws by impermissibly classifying him apart from other applicants with criminal records who have been admitted to the bar.

The basis of the equal protection argument is unclear. His opening brief does not set forth any authority, nor does he specify any impermissible classification was practiced by the State. The argument about impermissible classification first appears in his reply brief. Arguments cannot be made for the first time in an appellant's reply brief. *See John Cheeseman Trucking* v. *Dougan*, 313 Ark. 229, 853 S.W.2d 278 (1993).

### b. Due process

Mr. Partin was afforded notice and a hearing before his application was denied. Nevertheless, he challenges the sufficiency of the procedure on two bases. First, he contends that the requirement that he post a bond before any further action could be taken on his application restricted his access to a hearing and caused undue delay in the disposition of his case. Second, he argues Mr. Thomas did not afford him procedural due process because the procedures used in reinstatement cases were used to resolve the character issue on his initial application to the bar.

An applicant who satisfies the statutory prerequisites for admission to the bar has a "legitimate claim of entitlement" to practice his profession. Those charged with investigating and making decisions upon an applicant's character and fitness to practice law must afford adequate due process of law. *Schware* v. *Board of Bar Examiners of New Mexico*, 353 U.S. 232 (1957); *see also Board of Regents of State Colleges* v. *Roth*, 408 U.S. 571, 92 S.Ct. 2701 (1972).

In its decisions concerning the constitutionality of filing fees, the Supreme Court has held that when a fundamental right is involved, a fee cannot restrict an indigent person's access to the courts. *Boddie* v. *Connecticut*, 401 U.S. 371 (1971). However, where a fundamental right is not involved, such fees do not violate due process, especially if alternatives are available for the vindication of the indigent's rights. *United States* v. *Kras*, 409 U.S. 437, 93 S.Ct. 631 (1973); *Ortwein* v. *Schwab*, 410 U.S. 604, 93 S.Ct. 1172 (1973). We have been cited to no authority for the proposition that one may have a "fundamental right" to practice law.

It is difficult to understand how the bond requirement violated Mr. Partin's due process rights, as he was ultimately able to have a hearing and present evidence on his own behalf. Nor have we been shown how Mr. Partin may have been prejudiced by application of the procedures of Rule XIII despite the fact that those procedures referred to reinstatement rather than initial instatement when the hearing was arranged and held.

The procedure prescribed by Rule XIII is similar to that described in a concurring opinion in *Willner* v. *Committee*

*on Character and Fitness*, 373 U.S. 201, 83 S.Ct. 1175 (1963), in which Mr. Justice Goldberg summarized the constitutional requirements: "The applicant, at some stage of the proceedings prior to such denial, must be adequately informed of the nature of the evidence against him and be accorded an adequate opportunity to rebut this evidence." The procedure used by Mr. Thomas and the Board afforded that opportunity.

The fact that the officers who gave the information contained in the search warrant affidavits which were part of the evidence were not present for cross-examination gives us some pause, but Mr. Partin has not shown that he objected on that or any other basis at the hearing. He merely disputed some of the significant details contained in those reports. He might have had more success in questioning that evidence had he been represented by counsel, but we have no reason to think that his *pro se* appearance was other than the result of his own choice, and we cannot say the hearing was other than fair in the circumstances.

Affirmed.

SPECIAL CHIEF JUSTICE MICHAEL R. MAYTON joins in this opinion.

ROAF, J., and SPECIAL JUSTICE RALPH WASHINGTON concur.

HOLT, C.J., and BROWN, J., not participating.

ANDREE LAYTON ROAF, Justice, concurring. The majority, in affirming the decision of the Board of Law Examiners denying the applicant's admission to the Bar of Arkansas, has, in effect, upheld the Board's findings that the applicant presently lacks good moral character. The Board found that Partin was not truthful regarding his involvement with marijuana in 1984 and 1986, and therefore did not demonstrate sufficient remorse or acceptance of the criminality of his actions.

This court has correctly determined that the findings of fact by the Board are not clearly erroneous. It is also clear that the Board did acknowledge appellant's commendable and apparently very successful efforts to rehabilitate himself since 1986; the consideration given these efforts is less clear.

However, the Board flatly did not believe the applicant's

responses to its inquiries about his past acts in allegedly manufacturing or growing marijuana on a large scale, acts for which he was never convicted, in either 1984 or 1986. The Board, in effect, conducted a trial and convicted the applicant of charges which he did not face in 1984 and was acquitted of in 1986, to reach its conclusion. Unfortunately for the applicant, it was permissible and appropriate for the Board to conduct this inquisition, as even the applicant agreed:

> Mr. Mashburn: [D]o you view our job as being ended if we determine that all you had was a series of — one dismissal of a felony conviction and then a series of misdemeanor convictions or do you view that we should look at the pattern of activity particularly after you're 30 years old and should have known better?

> Mr. Partin: I'm sure — yeah, I believe it should be considered.

> Mr. Mashburn: The pattern should be considered, shouldn't it?

> Mr. Partin: Yes.

The tenor of the questioning did not bode well for the applicant or for his chances before the Board:

> Mr. Mashburn: Let me just ask you this. You have a conviction in 1973 and then you have another conviction in 1984, *were you growing dope all that time between 1973 and 1984 or did they just happen to catch you with the first patch you planted?* (Emphasis added.)

> Mr. Partin: I've already told you that I wasn't growing dope.

> Mr. Mashburn: You weren't growing dope?

> Mr. Partin: No, sir.

> Mr. Mashburn: You've never grown dope —

> Mr. Partin: No.

Mr. Partin wanted to be judged by his actions since 1986; the Board would not or could not let him put his past behind him

and therein lies his dilemma. Although I cannot say that the Board was clearly erroneous in denying the application, if the decision ultimately turned on the applicant's perceived lack of candor about alleged past criminal acts, then the issue of his rehabilitation has really not been reached. I find the anaylsis employed by the Supreme Court of California in a similar case to be more equitable while still fulfilling the duty of a Board or Committee to safeguard the integrity of the bar and the courts, and to protect the public against potentially dishonest or unethical practitioners. In *Hightower* v. *State Bar of California*, 34 Cal.3d 150, 666 P.2d 10 (1983), the Supreme Court stated the "fundamental question remains whether petitioner is a fit and proper person to be permitted to practice, and that question usually turns upon whether he has committed or is likely to continue to commit acts of moral turpitude." In *Hightower*, the Court questioned "the wisdom of denying an applicant admission to the bar if that denial rests on the applicant's choosing to assert his innocence regarding prior charges rather than acquiesce in a pragmatic confession." *Id.; see also Martin B.* v. *Comm. of Bar Exrs. of State Bar*, 33 Cal.3d 717, 661 P. 2d 160 (1983). In the instant case, the prior charges are over eight years old and should be put to rest.

I concur only because the standard for review is such that it cannot be overcome in this case.

RALPH M. WASHINGTON, Special Associate Justice, joins in the concurrence.