Randall Mark SHOCHET *v.* ARKANSAS BOARD of LAW EXAMINERS

98-369                                          979 S.W.2d 888

Supreme Court of Arkansas
Opinion delivered November 19, 1998

*Appellant, pro se.*

*W. Frank Morledge, P.A.*, for appellee.

DAVID NEWBERN, Justice. This is an appeal from a decision of the Arkansas Board of Law Examiners denying the application of appellant Randall Mark Shochet for admission to the Bar of this Court. Mr. Shochet has completed the necessary educational requirements, and he passed the Arkansas Bar Examination in July 1996. The Board determined, however, that Mr. Shochet failed to establish "good moral character beyond a

preponderance of the evidence," as required by Rule XIII of the Rules Governing Admission to the Bar, and denied his application on that basis. Mr. Shochet argues on appeal that the Board's findings and conclusions underlying its decision are clearly erroneous. We affirm the Board's decision.

Mr. Shochet attended dental school in Florida after completing his undergraduate studies in 1981. He later moved to Missouri, where, in 1986, he obtained a license to practice dentistry. In 1990, the Missouri Dental Board filed a complaint before a state administrative agency claiming that Mr. Shochet, in 1988 and 1989, had billed an insurance company for dental services he had not rendered. The Dental Board also claimed that Mr. Shochet had provided its officials with false information during their investigation of the matter and that he had committed perjury while testifying before the Dental Board.

Mr. Shochet enrolled in the St. Louis University School of Law in August 1991. In February 1992, Mr. Shochet and the Missouri Dental Board resolved the matter described above. The Dental Board abandoned its perjury charge, and Mr. Shochet admitted he had billed an insurance company for services he had not rendered. Mr. Shochet accepted a 120-day suspension of his dentist's license commencing April 1, 1992, and running through July 29, 1992.

In March 1992, prior to the commencement of the suspension period, Mr. Shochet entered into an agreement with Dr. Glenn D. Yowell providing for Dr. Yowell to assume Dr. Shochet's dentistry practice. The agreement provided as follows:

> Dr. Shochet agrees to furnish the dental facility located at [address given], including all equipment, instruments, and supplies to Dr. Yowell in exchange for an amount to be mutually agreed upon.
>
> Such reimbursal will not be measured against patient fees and billings, and is not "fee splitting." It is only based on the usage of the dental office.
>
> Dr. Yowell is to provide his own professional liability insurance.

> Our relationship may be terminated on either side by either giving the other three (3) weeks notice of their intention to terminate.

Mr. Shochet and Dr. Yowell signed a separate document — a letter dated March 9, 1992, and written by Mr. Shochet — that reflected further details of their arrangement. Mr. Shochet referred to Dr. Yowell as "an independent contractor Dentist" and indicated that Dr. Yowell was to "perform dental services on our patients at our office by appointments set by us Monday thru Friday or to be amended by mutual agreement." The letter revealed that Mr. Shochet would pay Dr. Yowell "the sum equal to 25% of the collections made for [his] billable services." Mr. Shochet "guaranteed" Dr. Yowell "a minimum of $3000 a month."

Mr. Shochet returned to his dentistry practice at the conclusion of the suspension period. He completed a Uniform Application for Securities Industry Registration or Transfer in April 1993 and was issued a Series 7 Securities License. Mr. Shochet sold his dental practice and, in August 1993, returned to Florida, where he worked for his father's securities business.

In November 1993, the Missouri Dental Board filed a second complaint against Mr. Shochet alleging that he had practiced dentistry during the period in which his license was suspended. The Dental Board referred to the agreement between Mr. Shochet and Dr. Yowell. It alleged that payments from patients or third parties received for work done by Dr. Yowell and a Dr. Rivera had been "deposited into a bank account which was in the name of [Mr. Shochet]"; that Dr. Yowell had been paid for his services pursuant to the agreement; and that Mr. Shochet had submitted claim forms to insurance companies and had received payment for dental work rendered during the suspended period. The Dental Board alleged that Mr. Shochet's conduct violated regulatory provisions that prohibit a suspended dentist "from receiving any compensation from any person, group practice, partnership or corporate practice, or any dental office in this state, during the period of suspension or revocation" and from accepting "fees from any capitation or third party payment program to which he might otherwise be entitled."

Mr. Shochet resumed his legal education at the University of Miami at Coral Gables School of Law in January 1994. In October 1994, Mr. Shochet and the Missouri Dental Board resolved the matter of his alleged practice upon a suspended license. Mr. Shochet admitted the Dental Board's allegations and surrendered his Missouri dentistry license. In December 1995, Mr. Shochet completed law school and earned his Juris Doctor degree.

On May 31, 1996, Mr. Shochet applied for admission to the Bar of this Court. Mr. Shochet was allowed to take the July 1996 bar examination subject to a continuing character and fitness investigation in the event that he passed the examination, which he did. The chairman of the Board of Law Examiners was unable to determine Mr. Shochet's eligibility, and Mr. Shochet appeared *pro se* at a hearing before three members of the Board and the Board's executive secretary.

By a vote of 10-1, the Board determined that Mr. Shochet failed to establish by a preponderance of the evidence that he possessed "good moral character" and, for that reason, denied his application for admission. The Board based its conclusion on (1) the facts surrounding the suspension and surrender of Mr. Shochet's Missouri dentist's license and his explanation of that situation to the Board during the hearing; (2) Mr. Shochet's responses to questions on both the Arkansas Bar Application Character Questionnaire and the application for the Series 7 Securities License, as well as his explanation of those responses made during the hearing; and (3) evidence that, in the Board's view, demonstrated Mr. Shochet's lack of "fiscal responsibility." Mr. Shochet now seeks reversal of the Board's decision and maintains that he "established sufficient good moral character" and should be admitted to the Bar of this Court.

■ "The applicant has the burden of proving eligibility and must do so by a preponderance of the evidence." *Partin v. Bar,* 320 Ark. 37, 41, 894 S.W.2d 906, 908 (1995). *See* Rule XIII of the Rules Governing Admission to the Bar. "We review bar admission and reinstatement cases *de novo,* and we will not reverse the findings of fact of the Board unless they are clearly erroneous." *Partin v. Bar, supra. See In re Application of Crossley,* 310 Ark. 435,

441, 839 S.W.2d 1, 3 (1992). We hold that the Board's findings are not clearly erroneous and affirm its decision denying Mr. Shochet's application for admission.

### 1. The Missouri dental license

The Board's decision rested in part on its factual findings concerning the suspension and surrender of Mr. Shochet's Missouri dentist's license. As mentioned, Mr. Shochet was suspended from the practice of dentistry in Missouri based on his admission to having billed an insurance company for services not rendered. Mr. Shochet admitted his culpability as to that allegation during the hearing, and, although the Missouri Dental Board had dropped its perjury charge, Mr. Shochet further admitted in the hearing that he had indeed committed perjury before the Missouri Dental Board. The Board found that Mr. Shochet "knowingly engaged in fraud and misrepresentation by billing for services not rendered during the period of 1988-1989. Further, the applicant resorted to perjury to thwart the investigative efforts of the Missouri Dental Board."

Mr. Shochet later surrendered his dentist's license following his admission that he had practiced dentistry during the period in which his license was suspended. During the hearing before the Board, however, Mr. Shochet maintained that he had done "nothing wrong" with respect to the unlicensed-practice charge. He conceded that, "legally," he had engaged in the unlicensed practice of dentistry, but he asserted that his actions were based upon the advice of counsel. Mr. Shochet testified that he chose to admit to the Missouri Dental Board's allegations and surrender his dentist's license only because (1) he wanted to foreclose the possibility of having his license *revoked*, which he perceived as a more severe sanction; (2) he lacked the financial resources to defend the charge; and (3) he saw no "purpose" in defending the charge because he was living in Florida and attending law school there, he did not intend to use his Missouri dentist's license again, and he planned to pursue a legal and dentistry practice in Florida.

The Board found that Mr. Shochet

> now denies responsibility for practicing dentistry while his license was suspended. He avers that his actions were based upon advice from his attorneys. He also suggests that his admission of culpability was a matter of expediency and convenience.
>
> The record shows that on January 15, 1992, prior to the beginning of the suspension period, the applicant's attorney set forth the circumstances under which the applicant could "rent" his office during the period of suspension. That letter made clear that the suspension prohibited the applicant from drawing any income from patients.
>
> By letter of March 9, 1992, the applicant, apparently without assistance of legal counsel, entered into an agreement with Dr. Glenn D. Yowell. Through the agreement with Dr. Yowell, he (the applicant) would control appointments, billing and equipment, etc. Any sums collected which exceeded Dr. Yowell's 25% and office expenses would flow as income to the applicant.
>
> The applicant associated Dr. Yowell as an "independent contractor" to continue receipt of patient income, contrary to the terms of his license suspension. Further, a majority of the Board gives little weight to the applicant's protestations that his arrangement with Dr. Yowell was based upon legal advice and that his admission of culpability was solely to avoid further litigation.

We cannot say that these findings of the Board of Law Examiners are clearly erroneous. Mr. Shochet admitted that he committed insurance fraud and perjury, and the Board properly considered this past misconduct in determining whether Mr. Shochet's possessed "good moral character."

It also was appropriate for the Board to take into account Mr. Shochet's practice of dentistry on a suspended license — misconduct that Mr. Shochet acknowledged in administrative proceedings in Missouri. In the hearing before the Arkansas Board of Law Examiners, however, Mr. Shochet denied responsibility for his misconduct. He asserted that his counsel had approved his plans for the operation of his dentist's office during the suspension period, and he suggested that his admission to the unlicensed-

practice charge was motivated, in the words of the Board, only by "expediency and convenience."

■ The Board obviously found Mr. Shochet's explanation disingenuous. It determined that Mr. Shochet was unable "to accept responsibility for his actions," and we cannot say that determination was clearly erroneous.

Nor is the Board's finding on this point contrary to the rule established in *Florida Board of Bar Examiners re G.J.G.,* 709 So.2d 1377 (Fla. 1998); *Florida Board of Bar Examiners re M.C.A.,* 650 So.2d 34 (Fla. 1995); and *Martin B. v. Committee of Bar Examiners,* 661 P.2d 160 (Cal. 1983), which are cited by Mr. Shochet. According to those cases, an applicant should not be denied admission on account of his or her assertion of innocence regarding a charge of past misconduct where the applicant has not been found "guilty" of the charge and has consistently maintained his or her innocence with respect to it.

■ Those cases do not assist Mr. Shochet here. Mr. Shochet has not consistently maintained his innocence with respect to the unlicensed-practice charge. He admitted the truth of the charge in proceedings before a Missouri agency and agreed to surrender his dentist's license. In the hearing before the Board of Law Examiners, however, Mr. Shochet changed his story, blamed his former attorneys, and essentially attempted to retract his prior admission of guilt. We find nothing in the cases cited by Mr. Shochet that precluded the Board from concluding, on the basis of Mr. Shochet's testimony, that he failed to accept responsibility for past misconduct that he previously acknowledged and for which he was sanctioned. An applicant's "continued denial" of an act for which he or she has been found guilty or sanctioned "does not serve the applicant well" in bar-admission proceedings and is, in fact, "unacceptable." *Florida Board of Bar Examiners re G.J.G.,* 709 So.2d at 1381.

## 2. Candor

■ The effect of Mr. Shochet's unlicensed practice of dentistry upon his bar application, and perhaps the effect of his commission of insurance fraud and perjury, might have been

diminished had Mr. Shochet shown that he had undergone "successful rehabilitative efforts." *Partin v. Bar,* 320 Ark. at 45, 894 S.W.2d at 910. As the Supreme Court of New Jersey observed,

> [a] fundamental rule in bar admission cases is that evidence of reform and rehabilitation is relevant to determine an applicant's present fitness to practice law. If an applicant's behavior subsequent to the disqualifying misconduct convincingly demonstrates rehabilitation, it can overcome the adverse inference of unfitness arising from past misconduct, and if persuasive, it may support a finding of present fitness.

*Application of Jenkins,* 94 N.J. 458, 467 A.2d 1084, 1091 (1983).

As we said in the *Partin* case, however, an important aspect of "rehabilitation" is an applicant's "candor about the past." *Partin v. Bar, supra. See also Application of Jenkins,* 467 A.2d at 1091 (stating that "[o]ne particularly relevant type" of evidence that is "probative of reform and rehabilitation" is "candor before the Committee").

■ On the "candor" issue, the Board found that Mr. Shochet had given false, misleading, or incomplete answers on his May 1996 Arkansas Bar Application Character Questionnaire and on his April 1993 application for a Series 7 Securities License. As we cannot say the Board's findings on this point are clearly erroneous, those findings not only supply an independent basis for the Board's decision to deny Mr. Shochet's application but also demonstrate that Mr. Shochet has *not* rehabilitated himself since the period of time in which he defrauded an insurance company, perjured himself before a state agency, and practiced dentistry on a suspended license.

The Board found that Mr. Shochet was asked in Question 9(c) of the Arkansas Bar Application Character Questionnaire whether he had ever been accused of fraud. Although it is undisputed that the Missouri Dental Board had accused Mr. Shochet of insurance fraud and that Mr. Shochet had *admitted* to that misconduct, he answered "no" to Question 9(c). Mr. Shochet testified that, in consultation with counsel, he answered "no" to Question 9(c) because he concluded that the insurance-fraud matter was addressed in his answer to Question 15(d), which inquired

whether a licensing authority had ever taken any disciplinary action against Mr. Shochet. Mr. Shochet admitted, however, that it would have been "better" to have responded "yes" to Question 9(c).

The Board also found that Mr. Shochet was asked in Question 15(a) of the Arkansas Bar Application Character Questionnaire whether he had "ever applied for a license, other than as an attorney at law, the procurement of which required proof of good moral character or examination (i.e., certified public accountant, patent attorney, real estate broker, etc.)." Although Mr. Shochet had applied for, and received, a Series 7 Securities License, and although that process required proof of "good moral character," Mr. Shochet failed to disclose the Series 7 Securities License in his answer to Question 15(a). In the hearing, Mr. Shochet acknowledged that he had failed to list the securities license, expressed regret for the omission, and said that he had "no excuse." He then sought to justify his incomplete answer, however, by arguing that he was not really a "stockbroker."

Finally, the Board found that, in his application for the Series 7 Securities License, Mr. Shochet was asked whether any federal or state regulatory agency or foreign financial regulatory authority had ever found him to "have made a false statement or omission or been dishonest, unfair, or unethical." Again, although Mr. Shochet had admitted to the charge of insurance fraud filed by the Missouri Dental Board, he answered "no" to this question. He testified before the Board that his answer had resulted from "advice of counsel" and his misunderstanding of a "poorly worded question."

The Board found that Mr. Shochet's

> responses to the various inquiries noted above [evince] a pattern of less than full disclosure to the Arkansas Board of Law Examiners and the Securities Licensing Authority. The applicant again attempts to shift responsibility either to "advice of counsel" or his misunderstanding of poorly worded questions.

The Board later concluded that Mr. Shochet

> has engaged in false and deceptive practices in completing the various applications for professional licenses. The instances where the applicant either chose to mislead or failed to fully inform are numerous. The initial willful fraud arose in connection with the first proceeding brought by the Missouri Dental Board in 1990. The record shows that the applicant has continued to engage in behavior which brings into question the applicant's ability to accept responsibility for his actions and his capacity for truthfulness and candor.

■ Truthfulness, honesty, and candor are "necessary characteristics for establishing a candidate's good moral character and hence his or her fitness to practice law." *Application of Jenkins,* 467 A.2d at 1088. There simply is "no place in the law for a man or woman who cannot or will not tell the truth, even when his or her own interests are involved. In the legal profession, there must be a reverence for the truth." *Id.* at 1091 (quoting *In re Hyra,* 15 N.J. 252, 104 A.2d 609 (1954)).

■ An applicant must "respond fully and accurately to those questions posed in an application for admission to the bar." *In re Ascher,* 81 Ill.2d 485, 411 N.E.2d 1, 7 (1980). He or she has an "unremitting duty of candor to all persons charged with investigating and passing upon" his or her qualifications. *Kosseff v. Board of Bar Examiners,* 475 A.2d 349, 353 (Del. 1984). "Moreover, the attributes of honesty and candor are *absolute* prerequisites to the admission to our Bar." *Id.* (emphasis added). *See also In re Green,* 464 A.2d 881 (Del. 1983); *In re Beasley,* 243 Ga. 134, 252 S.E.2d 615 (1979); *Application of Walker,* 112 Ariz. 134, 539 P.2d 891 (1975); *In re Willis,* 215 S.E.2d 771 (N.C. 1975). *See* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 15.3.2, at p. 863 (1986).

Here, the Board found that Mr. Shochet was less than candid in his responses to two questions on the Arkansas Bar Application Character Questionnaire and one question on his application for a Series 7 Securities License. We cannot say the Board's findings are clearly erroneous. Mr. Shochet offered explanations for his answers, but we cannot say that the Board erred by finding that his explanations were not credible, as it apparently did.

■ The Board's decision to deny Mr. Shochet's application for admission was justified on the basis of Mr. Shochet's misconduct in his dentistry practice in Missouri; his failure to accept responsibility for certain aspects of that misconduct; his failure to show that he has "rehabilitated" himself since engaging in that misconduct; and his lack of candor in answering questions on applications for professional licenses. Because we affirm the Board's decision on the basis of these factors, it is unnecessary to discuss the Board's additional finding that Mr. Shochet displayed a lack of "fiscal responsibility."

Affirmed.