2013 Ark. 289

**John Patrick MOODY, Petitioner**

v.

**ARKANSAS STATE BOARD OF LAW EXAMINERS, Respondent.**

No. CV–12–1010.

Supreme Court of Arkansas.

June 27, 2013.

Thomas & Hickey, L.L.P., El Dorado, by: Floyd M. Thomas, Jr., for appellant.

Jaletta Long Smith, Office of Professional Programs, for appellee.

JOSEPHINE LINKER HART, Justice.

John Patrick Moody appeals from a decision of the Arkansas State Board of Law Examiners (the Board) denying him admission to the bar. On appeal, he argues that the Board erred in (1) finding that the record does not reflect that he has maintained a sufficient period of sobriety to establish the necessary mental and emotional stability to practice law; and (2) denying him admission outright, rather

than deferring the question or admitting him conditionally pursuant to Rule XIII(D) of the Rules Governing Admission to the Bar. Our jurisdiction is based on Arkansas Supreme Court Rule 1–2(a)(5) (2012) as it implicates our power to regulate the practice of law, and Rule XIII(F) of the Rules Governing Admission to the Bar. We affirm.

At a May 6, 2012 hearing before a panel of the Board, Moody testified that he was thirty-three years old and employed at his father's law firm. He stated that he first took and passed the Arkansas bar exam in 2008, but failed to pass the Multistate Professional Responsibility Exam (MPRE) that year. After retaking and failing the bar exam in 2010, he took and passed the bar exam and the MPRE in 2011.

Moody discussed his involvement with alcohol, including an incident on August 6, 2005, when, while intoxicated after a night of partying, he struck and killed a bicyclist, Jason Pratt. Moody confirmed that he neither stopped to render aid to the victim nor turned himself in to the police. He claimed, however, that he was a "blackout drinker" and remembered "very little" of what happened that night.

Admitting that he was an alcoholic, Moody outlined the multiple programs he had attended over the years to combat his alcohol addiction. Asserting that he was in the Alcoholics Anonymous (AA) program, Moody claimed he was "currently" doing well, but acknowledged that he had previously "stumbled." Moody declined to guarantee that he would not drink again and admitted that every day was a "struggle." Nonetheless, he wanted to be an attorney because it was a "good way to help people."

In response to questioning by the panel, Moody stated that in June 2010, he received inpatient alcohol treatment at a facility in Tennessee. Moody attributed his relapses to emotional setbacks and stress. Drinking, he said, was his way of coping with disappointing events. According to Moody, his longest period of sobriety was from May 2007 until October 2009. In testimony regarding the accident that killed Jason Pratt, Moody noted that he served ninety days in jail following his guilty plea and an additional twenty to twenty-one days after he violated his probation. Moody acknowledged that he was a law student at the time he killed Jason Pratt, but he received no disciplinary action from the law school. He did note, however, that his ninety days of jail time caused him to miss a semester.

At the time of the hearing, Moody claimed that he had eight months of continuous sobriety. He opined that, this time, his pursuit of sobriety would be different because he was currently working with a sponsor through AA, something he had not done in the past. Moody asserted that he attended from one to three AA meetings a week.

Timothy R. Laughlin testified that he had been Moody's AA sponsor for four months. Laughlin reported that he had been in daily contact with Moody, albeit mostly by telephone. He attributed Moody's alcoholism to low self-esteem, a situation that he claimed Moody was working on.

Moody's father, Edward O. Moody, and his father's law partner, Lewis Ritchey, both testified that they supported Moody through his failed attempts to get sober. They both opined that Moody was currently doing well. They also stated that Moody appreciated the significance of his problem with alcohol. Ritchey acknowledged that Moody had "stumbled a few times" since he began working in the law office in 2009.

Jason Pratt's mother, Sandra Jo Dale, testified that she had driven eleven hours from her home in Ohio to attend the hearing. According to Dale, neither Moody nor any member of his family personally expressed his remorse for having killed her son. She was surprised that Moody was allowed to finish law school. She stated that she and her son's extended family continued to suffer emotionally as a result of Jason's death. Dale introduced several letters from family members who opposed Moody's admission to the bar. Dale admitted that she did not know if Moody had been to her son's gravesite. Dale was cross-examined[4] about a wrongful-death settlement that Moody's insurance had paid. She stated that her ex-husband had apparently received an insurance settlement, but she had not received any money.

Moody was recalled and claimed he was "extremely" remorseful for having killed Jason Pratt. He stated that, when it first occurred, he did not "reach out" to the victim's family because he was "advised" not to. Subsequently, he wondered if they would want to hear from him. Moody claimed he resorted to alcohol to "escape" the misery of "realizing [he was] in a nightmare." Upon questioning by the Board, Moody admitted that he had never been to Jason Pratt's grave. He also admitted that one of the steps in the AA twelve-step program is to reach out to the victim and the people that the alcoholic has wronged, but claimed that there was a "caveat" that excused him because that step is obviated if it is going to "create more harm and damage."

Included as an exhibit at the hearing was Moody's criminal file. It contained the presentence report, which detailed the investigation that led to Moody's arrest in the Jason Pratt homicide. It stated that at approximately 4:30 a.m. on August 6, 2005, a vehicle struck Jason Pratt as he rode his bicycle on West Markham Street in Little Rock. Less than an hour later, Mike Fitzhugh was awakened by what sounded like the thump of a flat tire in the Bank of the Ozark parking lot just south of his bedroom patio window. Immediately, Fitzhugh heard the "clinging sound" of beer bottles being tossed into a dumpster. He observed a white male unloading an ice chest from the rear seat of a Land Rover and placing it in the trunk of a dark-colored Ford Mustang. That same white male also took a pack of beer out of the Land Rover and placed it next to the ice chest. Fitzhugh subsequently noticed a second white male, whom he later identified as Moody, holding a flashlight, looking at the front passenger side [5]of the Land Rover. He later got into the Mustang with the first white male, who was driving. The two males left the Land Rover in the bank parking lot.

At 6:20 a.m., Jason Pratt's body was discovered next to his bicycle. Located nearby were three pieces of broken amber glass. At approximately 7:00 a.m., Fitzhugh walked out to the Land Rover and noticed damage to the front passenger side and a flat tire. The next day, Fitzhugh read about a hit-and-run accident that claimed the life of Jason Pratt. At approximately 1:30 that afternoon, he again walked out to the Land Rover and noticed the brush guard was still attached to the vehicle and that there was yellow paint on the shock. Later that day at about 5:30, Fitzhugh saw the brush guard lying on the ground next to the right front tire. He began to suspect that the Land Rover was involved in the fatal hit-and-run accident. Fitzhugh called his sister, who informed Little Rock police lieutenant Mike Davis.

On Monday, August 8, 2005, at approximately 2:50 a.m., Fitzhugh was awakened by the sound of something being thrown into the back of the Land Rover. He

observed a silver SUV near the Land Rover. Subsequently, both vehicles exited the parking lot. Fitzhugh was unable to see the driver of the Land Rover, but he did get a look at the driver of the SUV, who was later identified as William Lawson Moody. Fitzhugh observed William Lawson Moody throw something into the woods behind a nearby Arby's restaurant. Police were called but were told by William Lawson Moody that they were just fixing a flat tire. The police did not make a report. However, Fitzhugh again called the police, asking this time that they make contact with him. The police observed yellow paint on the coil spring but thought that the damage was "old." One of the men told the officers that he had just spoken with police. Again, the police failed to make a report.

Later that morning, Officer Verkler received information regarding Fitzhugh's suspicions about the Land Rover from Lieutenant Davis. Officer Verkler determined that the Land Rover belonged to Moody's father, Ed Moody. Ed Moody stated that he had been out of the country on vacation and that Moody had been driving the vehicle. Ed Moody admitted that his son had called him about the location of a jack because he had a flat tire. Cell-phone records showed that Ed Moody received a call from Moody at 4:21 a.m. and 9:22 a.m. on the day that Jason Pratt was killed.

On August 17, 2005, Officer Verkler obtained a search warrant for the Land Rover. The pieces of broken amber glass recovered at the crime scene matched a broken light on the Land Rover. Moody told police that the damage to the Land Rover was "old," but did not give a specific date. The police developed Moody as a suspect, and prior to his arrest, legal counsel was hired. Ultimately, on October 6, 2006, Moody pleaded guilty to negligent homicide, a misdemeanor. The felony count of leaving the scene of an accident involving injury or death was nol-prossed. Moody received a year's probation.

On April 21, 2007, Moody was arrested for DWI. Several months later, he pleaded guilty to violating the terms of his suspended sentence. According to the judgment and commitment order, Moody received a sentence of only ten days' confinement.

Also before the Board was Moody's October 19, 2011 interview with the Board's Executive Secretary, Chris Thomas. In the interview, Moody admitted that he began abusing alcohol at about age fourteen, when he was a freshman in high school. His first legal problems associated with his consumption of alcohol occurred in December 2003 when he was charged with public intoxication in Beaumont, Texas. The next incident was the fatal hit-and-run accident involving Jason Pratt. Moody claimed he could not remember much of what happened that evening, just "bits and pieces." Moody stated that he was never interviewed by detectives and had no role in his plea negotiations. He noted that he was arrested for DWI just three months after his conviction. Again, he was not interviewed by police, and the trial court merely ordered alcohol treatment. Pursuant to his guilty plea, he attended his second inpatient alcohol treatment at a facility in Mississippi. Moody claimed that he continued treatment on an outpatient basis and voluntarily began attending AA meetings.

He had been asked by Thomas to provide proof of attendance. When asked about the paucity of the records, Moody explained that some of the sheets got "wet and damaged" when he kept them in his car. He further noted that when he applied for admission in February 2008, he had told Thomas that he intended to enlist

in the lawyer-assistance program to ensure his recovery. He admitted that he did not follow through, but ascribed this failure to his expectation that he would not be eligible. Moody further testified that he had another month-long inpatient alcohol treatment in Tennessee in June 2010. He conceded that his involvement with AA had not ended his craving for alcohol. He admitted to alcohol consumption approximately a month and a half before the interview with Thomas. He also admitted that his attendance at AA meetings had been "sporadic," that he did not have a sponsor, and that he did not request documentation.

The Board voted eight to two to deny Moody admission to the bar. In pertinent part, it found that Moody had relapsed several times since the hit-and-run accident that claimed the life of Jason Pratt. One of these relapses resulted in an arrest for drunk driving. The Board acknowledged that Moody was working with an AA sponsor but that he had only been doing so for four months. The Board further noted that after Moody killed Jason Pratt, he "actively engaged in efforts to mislead authorities and to cover up his crime." Board concluded that "the record does not reflect that [Moody] has maintained a sufficient period of sobriety to successfully establish the present mental and emotional stability and good moral character by a preponderance of the evidence such that he should be granted a license to practice law in the State of Arkansas." Moody timely filed a notice of appeal.

On appeal, Moody first argues that the Board erred in finding that the record does not reflect that he has maintained a sufficient period of sobriety to establish the necessary mental and emotional stability to practice law. He asserts that the record indicates that he "has taken full responsibility for his actions," that he is "actively engaged" in an AA twelve-step program, that he talks with his sponsor on a daily basis, that he has bought a home, and that he is a valued employee in his father's law office. He further argues that he accepted responsibility for his actions by pleading guilty to negligent homicide. In his reply brief, Moody's appellate counsel also attempts to shift blame to the victim, Jason Pratt, by asserting that "there never has been an attempt to question what Jason Pratt was doing riding a bicycle on a major thoroughfare, West Markham Street in Little Rock, at 4:30 in the morning" and "there has never been an inquiry as to whether Mr. Pratt may have been in violation of the law for riding his bicycle afer dark without lights or whether he contributed to his own death because he was not wearing any reflective clothing." [1] We find this argument unpersuasive.

An applicant for admission to the Arkansas Bar has the burden of proving eligibility by a preponderance of the evidence. *Partin v. Bar of Ark.*, 320 Ark. 37, 41, 894 S.W.2d 906, 908 (1995). We review decisions of the Board denying admission to the bar de novo, and we will not reverse the Board's findings of fact unless they are clearly erroneous. *Shochet v. Arkansas Bd. of Law Exam'rs*, 335 Ark. 176, 979 S.W.2d 888 (1998).

We believe that the record does not clearly demonstrate that Moody has put behind him more than two decades of alco-

---

1. There is absolutely no evidence in the record concerning how Jason Pratt was dressed at the time he was struck and killed by Moody. Moody claimed that he was suffering from an alcohol blackout at the time, and, as noted previously, Moody did not stand trial for his crime, so there was no trial testimony.

hol abuse. It does, however, show that after the 2005 accident, Moody has attended at least three inpatient alcohol treatment programs, but after each treatment, he has relapsed, with his longest period of sobriety being less than two and one-half years. While he apparently is involved with AA, his work with a sponsor began only after his interview with the executive secretary and was only of limited duration at the time of his hearing. Further, Moody acknowledges that one of the triggers of his alcohol abuse was stressful situations. There was testimony suggesting that Moody may be a "valued" employee in his father's law office, however, even his father's law partner, Lewis Ritchey, conceded that Moody's job performance had periodically been substandard.

We recognize that the accident that resulted in Jason Pratt's death occurred more than seven years ago, but Moody's use of alcohol continued, and according to his testimony, his last period of abstinence was only eight months before the hearing. Given the seriousness of the repercussions of Moody's conduct while under the influence of intoxicants, his failed attempts at rehabilitation, and the short period of time that Moody has refrained from the use of alcohol at the time of the hearing, we cannot say that the Board's findings were clearly erroneous. We affirm the Board on this point.

For his second point, Moody argues that the Board erred in denying his admission completely rather than deferring the question or admitting him conditionally pursuant to Rule XIII(D) of the Rules Governing Admission to the Bar. We decline to address this point.

Under Rule XIII(D), the Chair of the Board (the Chair) is vested with the authority to appoint a Deferral of Admission Committee, and, if the Chair concludes that an applicant by examination might be eligible for admission absent a current "condition or impairment resulting from alcohol or other chemical or substance abuse which currently adversely affects the applicant's ability to practice law in a competent and professional manner," the Chair may offer the applicant a chance to participate in the deferral-of-admission program. Under the plain wording of Rule XIII(D), the Chair has sole authority for determining whether an applicant is eligible.

As Moody himself notes, the possibility of deferred admission was not even an issue in this case until he raised it on appeal. There is nothing in the record to indicate that the Chair concluded that Moody was a candidate for the deferral program, nor is there any indication that Moody requested consideration. We decline to address arguments that were not developed below. *Ligon v. Rees*, 2010 Ark. 225, 364 S.W.3d 28.

Affirmed.